UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,                              10 Cr 268 (DLI)

        -against-

SHAUN TAYLOR,

               Defendant.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF SHAUN TAYLOR'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

### INTRODUCTION

Shaun Taylor was tried on various counts relating to a narcotics conspiracy and the drug-related murders of Joseph Vargas and Terrance Barnett. Mr. Taylor now brings this Motion for a New Trial, pursuant to Federal Rule of Criminal Procedure 33(b)(1), permitting a defendant to bring a motion for a new trial within three years of a guilty verdict, if the motion is grounded on "newly discovered evidence." Fed.R.Crim.Pro. 33. The verdict was returned in this case on September 8, 2014. This motion is based on the newly available evidence of a key witness in the case, Timothy Pinkney. Mr. Pinkney was not called as a defense witness during the trial, because Mr. Taylor did not know that his testimony would be exculpatory.

Mr. Pinkney recently wrote to defense counsel that the statements he made to a government informant that were introduced at the trial were lies that he told the informant, because the informant lead him to believe that Mr. Taylor had been involved in the shooting of Mr. Pinkney. If called as a witness at a new trial, Mr. Pinkney's testimony would severely undermine the government's case against Mr. Taylor and would likely lead to an acquittal on Counts Two and Three.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Taylor was originally indicted on November 22, 2011. On August 4, 2014, Mr. Taylor was tried on superseding indictment, S2. Mr. Taylor was charged with the murders of Joseph Vargas and Terrance Barnett. Mr. Pinkney was charged with narcotics conspiracy, and the drug related murder of Terrance Barnett. Jury selection commenced on August 4, 2014; perspective jurors were placed under oath, given preliminary instructions, and ordered to return on August 13, 2014. On August 6, 2014, Mr. Taylor's codefendant, Timothy Pinkney, plead guilty to Count 13 of superseding indictment, S3. Mr. Taylor's trial proceeded, and on September 9, 2014, Mr. Taylor was found guilty of all Counts contained in the second superseding indictment. Mr. Taylor filed a motion to set aside the verdict pursuant to Rule 29(c) on September 16, 2014.

At trial, on September 2, 2014, the government introduced Mr. Pinkney's medical records from an incident occurring on June 6, 2006 in which he sustained four gunshot wounds. (Tr. 1660.) (Tr. Ex. 211.)[1] They also admitted copies of the inmate quarters history for Timothy Pinkney from December 21, 2011 to January 9, 2013, while Mr. Pinkney was detained at the Metropolitan Detention Center in Brooklyn ("MDC"). (Tr. Ex. 331.) An inmate quarters history was offered and admitted for a confidential informant ("CI") who was also detained at the MDC from December 21, 2011 to June 20, 2014. (Tr. Ex. 332.) The inmate history records indicated that Mr. Pinkney and the CI were cellmates for part of this time period. The government then introduced a recording that was made at the MDC of a conversation between Mr. Pinkney and the CI (Tr. Ex. 351).[2]

---

[1] Exhibits from Mr. Taylor's trial will hereinafter be referred to as Tr. Ex.
2 The CI's brother, Bryan Williams, colloquially called "Birdman" or "Baby", is an entertainment mogul whose massive wealth is matched only by his notoriety. See eg. Shawn

2

On the portion of the recording that was played to the jury, Mr. Pinkney boasts to the CI that he committed the murder of Terrance Barnett at Mr. Taylor's behest. He describes how he shot Mr. Barnett because he believed Barnett had stolen Mr. Taylor's phone. During the recorded conversation, Mr. Pinkney claimed that Mr. Taylor paid him $1,000.00 after the shooting. Mr. Pinkney describes the murder in detail stating that while riding in Taylor's car, Taylor told Pinkney, "that's the nigga right there." Pinkney asked, "You want me to hit the nigga?" Taylor said, "Yeah, I got some bread for you." Pinkney said that Taylor then parked around the corner. Pinkney explained, "That day [Taylor] asked me, I was never hesitant". Pinkney stated, "I walked up. The gun was in my sleeve. One was in the head already." Pinkney continued, "I dogged that dude with a .380. Everything up here. Four shots to the face." Pinkney said, "I could tell he was dead after the first one." Pinkney stated afterwards, "I jumped in [Taylor's] car. [Taylor] didn't want the gun." (Exhibit 2. Pg. 4-8)

Pinkney also tells the CI that he was shot by an associate of Mr. Taylor's called Luck. (Ex. 2. Pg.16). In the portion of the transcript of the recording that was not played for the jury, the confidential informant claimed that Taylor told him that he had shot Mr. Pinkney. (Ex. 3. Pg. 6-7.) Notably, the CI had never had a conversation with Taylor.

Mr. Taylor testified at trial about the statements that Mr. Pinkney made in the recording. He also testified that Mr. Pinkney was a braggart, who boasted about things that weren't true, and that Pinkney did not have anything to do with Mr. Taylor's drug business. Tr. 1759 – 60. Mr. Taylor denied any involvement in the shooting of Mr. Pinkney or the murder of Terrance Barnett. Tr. 1762.

---

Setaro, Baby Money: Inside the Early Years of Birdman's Cash Money Records, Forbes, May 5, 2015 available at http://www.forbes.com/sites/shawnsetaro/2015/05/05/baby-money-inside-the-early-years-of-birdmans-cash-money-records.

3

On November 11, 2015, defense counsel received a letter from Timothy Pinkney. In the letter, Mr. Pinkney explained that the CI had lead Mr. Pinkney to believe that Mr. Taylor had been involved in his shooting. Mr. Pinkney explained that he was angry with Mr. Taylor, and his anger and mistaken belief "lead him to lie and say the things [he] said on the wiretap to the confidential informant." Mr. Pinkney further explains that at the time he shot Mr. Barnett he "didn't know Shaun Taylor", he explains that "Everything [he] said on the wiretap was all puffery and [he] was trying to impress the confidential informant by belittling Shaun Taylor's character." (Ex. 1.) Notably, Pinkney's desire to curry favor with the CI was based upon the CI's wealth and notoriety. The CI was known as "gangsta" and is serving a life sentence for conspiracy to commit murder and he and his brothers are rumored to have participated in several other murders.[3] An alliance with the CI would greatly increase Mr. Pinkney's status in the confines of the prison, and ensure his protection.[4]

Prior to the trial, Mr. Taylor moved to sever his case from Mr. Pinkney's due to a *Bruton* violation that would occur, should the recording of the conversation between Mr. Pinkney and the CI be entered into evidence. Mr. Pinkney moved to suppress the recording. On April 24, 2014, the Court denied Mr. Taylor's motion for a severance and Mr. Pinkney's motion to suppress the recording. The Court found that the recording could be admitted without Mr. Pinkney's testimony, pursuant to Federal Rule of Evidence 804(b)(3).

---

[3] *See, eg.* Insanul Ahmed, *The 10 Most Gangsta Hip-Hop Label Executives*, COMPLEX MAGAZINE, Oct. 18, 2010, *available at* http://www.complex.com/music/2010/10/bawse-the-10-most-gangsta-hip-hop-label-executives.

[4] For example, in a portion of the transcript that was not read to the jury, Mr. Pinkney explains that he believes Mr. Taylor and Luck were sufficiently shocked and impressed by the CI's friendship with Mr. Pinkney that they decided not to pursue an altercation. "I bet you S… like 'that['s] Baby['s] brother.' And then Luck be like, 'Word, Timmy fuck with Baby['s] brother?' He like, what the fuck? Like that's why he probably fell back, you know? S probably like chill." (Ex. 3. Pg. 42.).

4

Neither the CI nor Mr. Pinkney testified at the trial. The defense did not have the opportunity to cross-examine either man as to the circumstances surrounding the recording or as to the substance of the recording. Throughout the trial, Mr. Pinkney was represented by counsel. Based on the substance of the recording, Mr. Taylor and his counsel believed that if Mr. Pinkney were called, his testimony would be consistent with the story told on the recording. Factually, there was no reason to believe otherwise.

Since receiving the letter, counsel contacted Mr. Pinkney's attorneys, pursuant to *In re Chan*, 271 F.Supp.2d 539 (2003). Counsel inquired whether Mr. Pinkney's attorneys would consent to an interview of Mr. Pinkney at his current location. Both of Mr. Pinkney's lawyers declined to allow an interview.

## STANDARD

Federal Rule of Criminal Procedure 33 states, in pertinent part,

> (a) Defendant's Motion.
>
> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b) Time to File.
>
> > (1) *Newly Discovered Evidence.*
> >
> > Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

Fed. R. Crim. Pro. 33.

This Court may grant a new trial under Rule 33 if the defendant can show that 1) the "defendant was [not] aware of the evidence before or during trial, and (2) there was [not] a *legal*

5

basis for the unavailability of the evidence at trial, such as the assertion of a valid privilege." *United States v. Forbes*, 790 F.3d 403, 408 (2d Cir. 2015). The defendant must additionally show that, "(1) the evidence must [be] newly discovered after the trial; (2) facts alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007).

## ARGUMENT

### TIMOTHY PINKNEY'S TESTIMONY SATISFIES THE FIVE-PART TEST FOR NEWLY DISCOVERED EVIDENCE UNDER RULE 33

**I. The Evidence is Newly Discovered**

There can be no dispute that Mr. Pinkney's letter exculpating Mr. Taylor is newly discovered evidence. (Ex. 1.) Mr. Pinkney explained, that he was furious with Mr. Taylor, because the CI lead him to believe that Mr. Taylor was responsible for him being shot repeatedly. Mr. Pinkney was so angry at Mr. Taylor that he lied to the CI, hoping that the CI would side with Mr. Pinkney should an altercation ensue. Additionally, Mr. Pinkney wished to enhance his status as a shooter, "Both [of] them niggers know my gun go… Luck know I ain't no chump. He know my gun go." (Ex. 2. Pg. 16.) Mr. Pinkney was trying to impress the CI because his brother was a famous rapper and producer. Mr. Pinkney wanted to have the support of this celebrity in order to have backup for the dispute he now believed he had with Mr. Taylor. He wanted the CI as an ally to increase his status in the jail.

Mr. Taylor was surprised by the contents of the MDC tape, and the fact that Mr. Pinkney implicated him in a murder he did not commit. He did not call Pinkney as a witness at trial

because he believed Pinkney's testimony would corroborate the MDC tape.  The fact that Mr. Pinkney pled during jury selection confirmed Mr. Taylor's belief.

Mr. Pinkney is now available to testify at a new trial.  He has accepted his responsibility for the crime he committed.  Pinkney's letter to defense counsel represents newly discovered evidence that "could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007) (quoting *U.S. v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980)).

The Second Circuit does not "preclude the possibility that a codefendnat's post-trial exculpatory statement may… qualify as newly discovered evidence within the meaning of Rule 33." *Owen* at 91. In this case, where "a codefendant's post-trial testimony does indeed constitute newly discovered evidence" it is appropriate to find such under Rule 33. *Id.*  Mr. Taylor had no way of knowing that Mr. Pinkney would have truthfully testified after he lied on the recording. Mr. Pinkney's post-trial exculpatory statements indeed constitute newly discovered evidence that warrant a new trial.

**B. Mr. Taylor Exercised Due Diligence to Obtain the Evidence**

Mr. Taylor was unaware of Pinkney's motivation to fabricate the lies he told to the CI. He did not realize that Mr. Pinkney had implicated him in a murder because Pinkney mistakenly believed that Mr. Taylor had been involved in shooting him.  There was no evidence available at the time of the trial that would lead Mr. Taylor to believe that Mr. Pinkney would testify truthfully at trial.  All factual evidence pointed to the scenario presented in the MDC tape.

**C. The Evidence is Material, Not Cumulative or Impeaching and Would Likely Result in Acquittal**

Mr. Pinkney's testimony would be material, not cumulative or impeaching and would likely lead to an acquittal. There can be little question that Mr. Pinkney's testimony would completely undermine a key component of the government's case against Mr. Taylor. Mr. Pinkney could explain to the jury why he told the confidential informant lies about Mr. Taylor. He could explain that he implicated Mr. Taylor in this crime, because he mistakenly believed that Mr. Taylor was involved in shooting him several times in the groin.

Pinkney also knew the CI was a person held in tremendous esteem among the inmates in the MDC, both because of his brother's significant fame and wealth, and because of his own reputation as a murderer. The CI lied to Mr. Pinkney, telling him that Mr. Taylor had admitted being involved in the shooting of Pinkney. Mr. Pinkney sought to align himself with the CI by bragging about his prowess as a killer and in the process implicated Mr. Taylor in the murder of Mr. Barnett. Pinkney added Mr. Taylor was scared of being involved in a shooting and was "soft". (Ex. 2. Pg 3, 5, 13, 26). This evidence is in no way cumulative or impeaching, but rather presents an entirely new angle to the defense' theory as to why Mr. Taylor was implicated in this murder.

**D. There Was a Factual, Rather than a Legal Basis For the Unavailability of the Evidence**

The evidence was not factually available because Mr. Taylor had no other information to contradict the story on the recording since he was not at the crime scene. In Pinkney's letter to counsel, he explained his motivation and the reasons behind his lies to the CI. Mr. Taylor only received this factual information after the trial, and thus it is truly newly available evidence. Mr. Taylor would have subpoenaed Mr. Pinkney to testify at his trial, however he reasonably believed that Mr. Pinkney would lie and substantiate the recording. He had no reason to believe

8

otherwise. There was no legal issue that prevented this evidence from being available, rather it was not factually available, because of Pinkney's untruths and the existence of the MDC recording.

## CONCLUSION

For the foregoing reasons, Mr. Taylor respectfully requests that his judgment of conviction be vacated and his Motion for a New Trial be granted.

Respectfully submitted,

Dated February 12, 2016

/s/
Margaret M. Shalley & Assoc. LLC
225 Broadway, Suite 715
New York, NY 10007
phone: 212.571.2670
fax: 212.566.8165