UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                          :
             -against-                    :
                                          :         **MEMORANDUM AND ORDER**
SHAUN TAYLOR,                            :              10-CR-268 (DLI)
     also known as "S-dot,"               :
                                          :
             Defendant.                   :
------------------------------------------------------------x

**DORA L. IRIZARRY, Chief Judge:**

On February 16, 2016, defendant Shaun Taylor ("Defendant" or "Taylor") filed a motion for a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. *See* Defendant's Motion for New Trial ("Motion"), Dkt. Entry No. 332. The government opposed it. *See* Government's Opposition ("Gov't Op."), Dkt. Entry No. 334. For the reasons set forth below, the Motion is denied in its entirety.

**BACKGROUND**

The Court assumes familiarity with the underlying facts of this case, as set forth in the Opinion and Order dated April 24, 2014, granting the government's pre-trial motion *in limine*, and denying the pre-trial motions *in limine* filed by Defendant and Pinkney, respectively. *See* Opinion and Order dated April 24, 2014 (the "April 2014 Opinion"), Dkt. Entry No. 139. Therefore, the following summary provides only those facts that are relevant to this Motion. Additionally, unless otherwise indicated, the Court incorporates into this Memorandum and Order all party-name abbreviations and designations from the April 2014 Opinion.

**I.     Procedural History**

On December 17, 2012, a grand jury within the Eastern District of New York returned a twelve-count indictment charging Defendant with the murders of Joseph Vargas ("Vargas") and

1

Terrance Barnett ("Barnett"), as well as narcotics distribution and firearms related crimes. *See* Superseding Indictment, Dkt. Entry No. 88. The Superseding Indictment also charged co-defendant Timothy Pinkney ("Pinkney") on four counts of the same indictment, including the Barnett murder. *Id.* Shortly before trial, Pinkney pled guilty to the Barnett murder pursuant to a plea agreement with the government. This Court subsequently sentenced him to 276 months' imprisonment. Defendant proceeded to trial, and on September 8, 2014, a jury convicted Defendant on all twelve counts.

On September 15, 2014, Defendant, through counsel, filed a motion to set aside the verdict under Rule 29(c). Dkt. Entry No. 268. The Court denied this motion for the reasons set forth on the record of the hearing dated November 7, 2014. On September 22, 2015, Defendant, proceeding *pro se*, filed a "motion for reconsideration" which, in fact, was a motion for a new trial under Rule 33. Dkt. Entry No. 321. By order dated October 22, 2015, the Court denied Defendant's *pro se* Rule 33 motion. Dkt. Entry No. 322. On February 16, 2016, Defendant, through newly appointed counsel, filed this Motion requesting a new trial as to the Barnett murder (Count Two) and the conspiracy to commit the Barnett murder (Count Three) based on allegedly newly discovered evidence. On February 18, 2016, the Court postponed Defendant's previously scheduled sentencing hearing pending adjudication of the Motion.

## II. Defendant's Trial

### (A) The Barnett Murder

Evidence presented at trial established that Defendant was a narcotics dealer who employed Pinkney as an enforcer. After an individual named Ronald Harrison ("Harrison") stole Defendant's cellular telephone, Defendant offered Pinkney $1000 to murder Harrison in retaliation. Defendant drove Pinkney to a location where he expected to find Harrison and gave

2

Pinkney a gun. Upon arriving at the scene, Defendant identified an individual he believed was Harrison; however, the person Defendant identified as Harrison was actually Barnett. Pinkney exited the car and approached Barnett while Defendant drove around the corner and waited. Pinkney then murdered Barnett by shooting him in the head and torso at close range.

Defendant testified on his own behalf, *inter alia*, that he was not involved in the Barnett murder. He further stated that he did not know Pinkney at the time of the Barnett murder, and that Pinkney was not involved in Defendant's drug business.

(B)     The Recording from the Metropolitan Detention Center

At trial, the government played a recording of a conversation between Pinkney and a confidential informant ("CI"), who was Pinkney's jail cellmate. The conversation occurred at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, on November 20, 2012. During the conversation, Pinkney described the Barnett murder in detail. Specifically, Pinkney stated, *inter alia*, that:

- Defendant offered to pay him for the murder, drove him to the scene, gave him the gun, and identified the victim;
- the reason for the murder was to avenge Harrison's theft of Defendant's cellular telephone; and
- he shot the victim near a schoolhouse in the presence of a third-party witness (later identified as Jermel Lyons ("Lyons")).

Pinkney also described the relative positions of Lyons and Barnett at the time of the murder, his path of approach toward Barnett, his path of flight after the shooting, and Lyons' path of flight after the shooting.

Throughout the conversation with the CI, Pinkney made disparaging comments about Defendant based on Pinkney's belief that an individual named "Luck," who was an associate of Defendant, shot Pinkney. Pinkney also suggested that Defendant was afraid to commit the Barnett murder himself, and repeatedly referenced his desire to retaliate against Defendant.

(C) Corroborating Witnesses

At trial, several witnesses corroborated many of the statements made by Pinkney on the MDC recording regarding the Barnett murder. One witness, Tyler Briggs ("Briggs") testified, *inter alia* and in sum and substance, that:

- Pinkney was employed by Defendant as "shooter" for Defendant's drug business;
- the relationship between Pinkney and Defendant went back as far as 2004;
- Defendant sought to avenge Harrison's theft of Defendant's cellular telephone;
- Briggs observed Pinkney get into Defendant's car just before the Barnett murder; and
- shortly after the murder, Defendant told Briggs that Pinkney shot the wrong person.

Another witness, Joshua Medina corroborated that Defendant had a dispute with Harrison over the cellular telephone, and that Pinkney was associated with Defendant at the time of the Barnett murder. Finally, Lyons, the eyewitness to the murder, confirmed Pinkney's description of the murder, including its proximity to a school, his position relative to Barnett and Pinkney before the shooting, and the path of flight taken by Pinkney and Lyons following the shooting.

## III. The Pinkney Letter

On November 11, 2015, Defendant's counsel received a letter from Pinkney in which he claims that Defendant is "innocent." *See*, Pinkney Letter, Motion, Ex. 1. In the letter, Pinkney explains that, in the event Defendant gets a new trial, Pinkney would testify that: (1) Defendant was not involved in the Pinkney shooting; (2) Pinkney did not know Defendant at the time he

4

committed the Barnett murder; and (3) "everything [Pinkney] said on [MDC recording] was all puffery. . . ." *Id*. Pinkney further states in his letter that the reasons he fabricated his story to the CI were that: (1) the CI led Pinkney to believe that Defendant was involved in the shooting of Pinkney; and (2) Pinkney was "trying to impress the [CI] by belittling [Defendant's] character. . . ." *Id*. Defendant contends that the Pinkney letter is "newly discovered evidence" that, under Rule 33, entitles him to a new trial.

**DISCUSSION**

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). Subsection (b) permits a defendant to file a motion for a new trial based on "newly discovered evidence" within three years of the verdict. Fed.R.Crim.P. 33(b)(1). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal citation omitted); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (cautioning that district courts should grant Rule 33 motions only "in the most extraordinary circumstances"). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Put another way, to warrant a new trial, "there must be a real concern that an innocent person may have been convicted." *Sanchez*, 969 F.2d at 1414.

A defendant is entitled to a new trial based on newly discovered evidence "only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence

5

is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'" *United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2015) (alteration in original) (quoting *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007)). The Second Circuit does not "preclude the possibility that a codefendant's post-trial exculpatory statements may ever qualify as 'newly discovered evidence.'" *Owen*, 500 F.3d at 91. However, it generally has taken a dim view of attempts by co-defendants to offer exculpatory testimony regarding another defendant after trial. *See Id.* at 89 (co-defendant's post-trial exculpatory statement "newly available" but not "newly discovered"); *Forbes*, 790 F.3d at 409 (same); *United States v. Jacobs*, 475 F.2d 286 n.33 (2d Cir. 1973) ("[A] court must exercise great caution in considering evidence to be "newly discovered" when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify."). In short, "when a defendant knew or should have known that his codefendant could offer material testimony as to the defendant's role in the charged crime, his inability to procure that testimony before or during trial should not be redressed by granting the defendant a new trial when the codefendant asserts his willingness to exculpate the defendant after the original trial is over." *Owen*, 500 F.3d at 92.

Defendant concedes that he was aware, before trial, that Pinkney allegedly was lying to the CI regarding Defendant's involvement in the Barnett murder. Defendant's Reply ("Def. Rep.") at 2. However, he claims that, at the time, he was not aware that Pinkney was motivated to lie to the CI because Pinkney believed Defendant was responsible for Pinkney getting shot. *Id.* Therefore, according to Defendant, "Pinkney's letter constitutes newly discovered evidence since it explains *why* Mr. Pinkney told the CI a series of untruths about [Defendant]." *Id.* Defendant is mistaken.

6

The Pinkney Letter does not satisfy any of the five prerequisites for the Court to find that it constitutes newly discovered evidence. First, Defendant's contention that he did not know Pinkney's motivation for lying to the CI is false. Pinkney's animus toward Defendant, as a consequence of his belief that Defendant was involved in Pinkney's shooting, is readily apparent from the MDC recording, *an unredacted transcript of which was made available to Defendant and his counsel before trial*. In fact, in his opposition to the government's pre-trial motion to admit the MDC recording ("Def. Op.," Dkt. Entry No. 135), Defendant made the following argument regarding the inherent unreliability of Pinkney's statements:

> Pinkney has admitted to a strong dislike for [Defendant], perhaps because Pinkney blames [Defendant] (and his associate) for shooting Pinkney on January 5, 2006. Indeed, it appears that the [CI] attempted to goad Pinkney into confessing his involvement to him by mentioning [Defendant], which he knew would induce Pinkney to implicate [Defendant] in the homicide. As such, the fact that Pinkney had a strong motive to implicate [Defendant] in the Barnett murder because he was angry at him stemming from the January, 2006 shooting substantially undermines the reliability of the MDC statement.

Def. Op. at 6.

Thus, as demonstrated by Defendant's own brief, the Pinkney Letter does not provide any new information regarding Pinkney's motive to lie that Defendant was not already aware of before trial.

Second, Defendant has not alleged facts "from which the [C]ourt can infer due diligence on the part of the movant to obtain the evidence." *Owen*, 500 F.3d at 91. According to Defendant, he "is not contending that Mr. Pinkney is newly available to testify." Def. Rep. at 2. Thus, under Defendant's own logic, if Pinkney is not newly available to testify post-trial, then he *was* available to testify during trial. In that case, Defendant simply failed to call a witness that potentially could have provided exculpatory testimony, and his Rule 33 motion must be denied on this ground as well. *Forbes*, 790 F.3d at 409 ("[I]f the reason that testimonial evidence was unavailable at trial

7

was the defendant's failure to call a witness that he knew could provide exculpatory testimony, a new trial on the basis of newly discovered evidence would not be warranted."). The Court need not speculate as to whether Pinkney would have asserted his Fifth Amendment privilege had he been called, because Defendant never attempted to procure his testimony. Defendant was free to not call Pinkney as a witness, but having made that decision, he must now face its consequences.

The Pinkney Letter also fails as to the third prong (materiality) and the fourth prong (evidence not cumulative or impeaching) of the newly discovered evidence test. What Defendant claims is newly discovered evidence, Pinkney's motivation to lie, by itself, is not sufficient to exonerate Defendant. It is the motivation to lie combined with the "lie" itself that would constitute material evidence. However, as Defendant admits that he has always known that Pinkney was lying on the MDC recording, the portion of the Pinkney Letter that is material is not newly discovered. Thus, the portion of the Pinkney Letter that Defendant claims is newly discovered, the motive to lie, is simply immaterial impeachment evidence that does not warrant a new trial.

Finally, Defendant's argument fails as to the fifth prong (evidence likely to result in acquittal) because of the overwhelming evidence implicating Defendant in the Barnett murder. First, even if Pinkney was angry with Defendant or was trying to impress the CI, it does not necessarily follow that Pinkney fabricated the story he told on the MDC recording. As discussed in the April 2014 Opinion, "Pinkney's statements, which incriminate both him and Taylor, also 'contain particularized guarantees of trustworthiness.'" April 2014 Opinion at 14 (quoting *United States v. Saget*, 377 F.3d 223, 230 (2d Cir. 2004)). Specifically, Pinkney made the statement to a person whom Pinkney believed was an ally, and Pinkney did not attempt to shift criminal responsibility for the Barnett murder from himself to Defendant. *Id.* at 15. Indeed, Pinkney derides Defendant for not taking a more active role. *Id.* Additionally, the government corroborated

Pinkney's version of the Barnett murder, including the underlying reason for the murder, through the testimony of multiple witnesses. Most damning for Defendant is that one of these witnesses even confirmed that Pinkney got into Defendant's car shortly before the murder, and Defendant informed this witness after the murder that Pinkney had shot the wrong person. Because the quality and quantity of evidence supporting the reliability of Pinkney's statement vastly outweighs the purported motive to fabricate, it is highly unlikely that the Pinkney Letter would result in acquittal.

Even if it is true that Defendant did not associate with Pinkney at the time of the Barnett murder, pay Pinkney for the Barnett murder, or drive Pinkney to commit the Barnett murder, Defendant would have known before trial that Pinkney could have testified to these facts. Defendant's contention that he did not know why Pinkney lied to the CI is not true, and even if it was, it does not change the fact that Defendant decided not to call a witness who potentially could exonerate him. *See Owen*, 500 F.3d at 91 ("If, as Owen claims, he did not discuss with [his co-defendants] a plan to ship marijuana to Florida, he would have known prior to trial that both [co-defendants] could have attested to this fact. Owen was at all times aware of [his co-defendant's] 'ability' to exculpate him, but was unable to benefit from [his co-defendant's] testimony because [his co-defendant] did not make it available until after the trial was over."). Instead, Defendant chose to present these facts to the jury through his own testimony, as was his right. *See Id.* (noting that where a defendant is unable to procure the exculpatory testimony of a co-defendant, "the defendant's remaining option is to take the stand and convey to the jury himself any facts-including dealings with codefendants-that would support a not guilty verdict."). Defendant made these choices freely upon the advice of competent counsel. As such, the law does not entitle him to revisit these decisions, even if he now believes he should have made different ones.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion is denied in its entirety.

SO ORDERED

Dated: Brooklyn, New York
September 9, 2016

>                         /s/
>                    Dora L. Irizarry
>                     Chief Judge